IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------X
In re                                                       :    Chapter 11
                                                            :
BLAKE OF CHICAGO CORP., et al.,                             :    Case No. 04-12002 (CGC)
                                                            :
              Debtors.                                      :    Jointly Administered
------------------------------------------------------------X
A.B. DICK COMPANY and                                       :
PARAGON CORPORATE HOLDINGS, INC.,                           :
                                                            :    Case No. 1:05-CV-00116-KAJ
              Plaintiffs,                                   :
                                                            :
       v.                                                   :
                                                            :
MHR CAPITAL PARTNERS, L.P.,                                 :
MHR INSTITUTIONAL PARTNERS, L.P.,                           :
MHRM, L.P., and MHR FUND MANAGEMENT LLC,                    :
                                                            :
              Defendants.                                   :
------------------------------------------------------------X
MHR CAPITAL PARTNERS, L.P.,                                 :
MHR INSTITUTIONAL PARTNERS, L.P.,                           :
and MHRM, L.P.,                                             :    Case No. 1:05-CV-00115-KAJ
                                                            :
              Third-Party Plaintiffs,                       :
                                                            :
       v.                                                   :
                                                            :
N.E.S. INVESTMENT COMPANY, et al.,                          :
                                                            :
              Third-Party Defendants.                       :
------------------------------------------------------------X
```

**REPLY MEMORANDUM OF MHR CAPITAL PARTNERS LP,
MHR INSTITUTIONAL PARTNERS LP, MHRM LP AND
MHR FUND MANAGEMENT LLC IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY
<u>JUDGMENT ON, COUNTS II AND III OF THE AMENDED COMPLAINT</u>**

460.001-9039

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.     Debtors Allege No Facts Demonstrating That MHR Exercised
          "Dominion" Or "Control" Over ABD ........................................................................ 2

    II.    Debtors "Insider" Argument Fails To Save Their Defective Equitable
          Subordination Claim ................................................................................................... 6

    III.   Debtors Fail Even To Address MHR's Causation Showing ..................................... 8

    IV.   Debtors Also Fail To Address MHR's Arguments Regarding
          MHR Management ....................................................................................................... 8

    V.    Debtors Offer Nothing To Refute MHR's Evidence Demonstrating
          That Debtors Welcomed MHR's Participation In The SPA Negotiations
          And Recognized That MHR, In So Negotiating, Was Not Representing
          The Interest Of Any Debtor ....................................................................................... 9

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Abex Inc. v. Koll Real Estate Group, Inc.*, 1994 Del. Ch.
LEXIS 213 (Del. Ch. Dec. 22, 1994) ................................................................. 5, 6

*Aluminum Mills Corp. v. Citicorp. N. Am., Inc.*
*(In re Aluminum Mills Corp.)*, 132 B.R. 869 (Bankr. N.D. Ill. 1991) .................... 3, 5

*Badger Freightways, Inc. v. Cont'l Illinois Nat'l Bank & Trust Co.*
*(In re Badger Freightways, Inc.)*, 106 B.R. 971 (Bankr. N.D. Ill. 1989) ............ 3, 6, 7

*Bus. Funding Group, Inc. v. Architectural Renovators, Inc.*, 1993 Del. Ch.
LEXIS 51 (Del Ch. Mar. 31, 1993) ............................................................................ 6

*Century Glove, Inc. v. Iselin (In re Century Glove, Inc.)*, 151 B.R. 327
(Bankr. D. Del. 1993) ......................................................................................... 3, 5

*In re Am. Lumber Co.*, 5 B.R. 470 (D. Minn. 1980) ................................................. 3

*In re Clark Pipe & Supply Co.*, 870 F.2d 1022 (5th Cir. 1989) ................................ 3

*In re Tech. for Energy Corp.*, 56 B.R. 307 (Bankr. E.D. Tenn. 1985) ...................... 7

*McMahon v. New Castle Assocs.*, 532 A.2d 601 (Del. Ch. 1987) ............................ 6

*Metro Ambulance, Inc. v. E. Med. Billing Inc.*, 1995 Del. Ch.
LEXIS 84 (Del. Ch. July 5, 1995) .............................................................................. 5

*Official Comm. Of Unsecured Creditors v. Credit Suisse First Boston*
*(In re Exide Techs., Inc.)*, 299 B.R. 732 (Bankr. D. Del. 2003) ................................ 7

*Preston v. Preston*, 1981 Del. Ch. LEXIS 577 (Del Ch. Apr. 16, 1981) ................... 8

*Toledo Trust Co. v. Peoples Banking Co. (In re Hartley)*,
52 B.R. 679 (Bankr. N.D. Ohio 1985) ....................................................................... 7

*Unsecured Creditors' Comm. v. Banque Paribas*
*(In re Heartland Chems., Inc.)*, 136 B.R. 503 (Bankr. C.D. Ill. 1992) ...................... 4

**Statutes**

Fed.R.Civ.P. Rule 12(b)(6) ......................................................................................... 1

Fed.R.Civ.P. Rule 56 .................................................................................................. 1

MHR Capital Partners LP, MHR Institutional Partners LP, MHRM LP and MHR Fund Management LLC ("MHR Management") (collectively, "MHR") submit this reply memorandum in further support of their motion, pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure (the "Rules" or "Fed.R.Civ.P."), to dismiss, or in the alternative for summary judgment on, Counts II and III of the Amended Complaint of Blake of Chicago Corp. ("ABD") and Paragon Corporate Holdings, Inc. ("Paragon") (collectively, "Debtors").[1]

## PRELIMINARY STATEMENT

In its opening papers, MHR demonstrated that Counts I and II of Debtors' Amended Complaint (also "Am. Cmplt.") are openly contradicted by the allegations of, and the documents referred to in, that Complaint and fail to set forth any claim for breach of fiduciary duty or equitable subordination against MHR with respect to the Stock Purchase Agreement. Further, MHR submitted uncontroverted evidence demonstrating that the Debtors themselves welcomed MHR's involvement in negotiating the SPA, and expressly recognized that MHR was not representing ABD in those negotiations. In short, Debtors' own admissions render their fiduciary duty and equitable subordination claims meritless.

In their opposition papers, Debtors all but ignore these critical issues – *i.e.,* what they actually allege and what they have already admitted. Instead, Debtors argue that MHR, as a creditor, owed ABD a fiduciary duty because MHR somehow exercised "dominion and control" over the operations of ABD. Of course, the Amended Complaint contains no allegations even suggesting such dominion or control.

In addition, Debtors argue that MHR was an "insider" of ABD, and that MHR's bankruptcy claims against Debtors should therefore be equitably subordinated. Of course,

---

[1] MHR has submitted an opening memorandum ("MHR Mem.") dated February 8, 2005, as well as the Declarations of Michael M. Fay ("Fay Decl."), sworn to on February 8, 2005, and Hal Goldstein, sworn to on February 8, 2005. The defined terms used herein are the same as those used in the MHR Mem.

1

Debtors' own case law establishes that a lender, like MHR, can be deemed an "insider" only where the lender exerts a "stranglehold" over the debtor such that the debtor becomes a "mere instrumentality" of the lender. Once again, the Amended Complaint is devoid of any allegations suggesting such a stranglehold.[2]

Further, in responding to MHR's alternative motion for summary judgment, Debtors submit no contrary evidence and merely argue that MHR somehow "hijacked" the SPA negotiation process and negotiated a Stock Purchase Agreement that was against Debtors' desires and to MHR's advantage. Of course, these arguments conveniently ignore:

(a) The uncontroverted evidence submitted by MHR demonstrating that Debtors welcomed MHR's participation in the SPA negotiation process and understood that MHR was not negotiating for Debtors; and

(b) The unambiguous provisions of the Stock Purchase Agreement and related agreements, which demonstrate that MHR was an arm's-length party to the SPA and that through the terms of that Agreement, MHR was actually relinquishing substantial rights, *including its entire interest in the 2001 Notes.* In fact, nothing MHR was to receive under the SPA and related agreements came close to the face value of the 2001 Notes.

In short, Debtors' fiduciary duty and equitable subordination theories are defective for several reasons, and MHR's motion to dismiss, or for summary judgment, should be granted.

---

[2] Debtors do not even address (a) their own admissions that Presstek, not MHR, actually terminated the SPA or (b) MHR's showing that as to MHR Management, a party that never owned 2001 Notes, Debtors' theories are absolutely meritless.

2

**ARGUMENT**

I. **Debtors' Allege No Facts Demonstrating That MHR Exercised "Dominion" Or "Control" Over ABD**

Debtors begin their opposition by citing cases for the proposition that where, unlike here, a creditor exercises "dominion and control" over an enterprise, that creditor may have a fiduciary duty to the enterprise. (Debtors Mem., p. 5, citing *Century Glove, Inc. v. Iselin (In re Century Glove, Inc.)*, 151 B.R. 327 (Bankr. D. Del. 1993); *Aluminum Mills Corp. v. Citicorp. N. Am., Inc. (In re Aluminum Mills Corp.)*, 132 B.R. 869 (Bankr. N.D. Ill. 1991); and *Badger Freightways, Inc. v. Cont'l Illinois Nat'l Bank & Trust Co. (In re Badger Freightways, Inc.)*, 106 B.R. 971 (Bankr. N.D. Ill. 1989)). However, Debtors fail to cite the full holdings of these cases, which demonstrates how significant this "dominion" and "control" must be:

> Exerting "dominion and control" means that the lender must "exercise sufficient authority over the corporate debtor so as to unqualifiably dictate corporate policy and the disposition of assets.". . .A close relationship between the debtor and lender is not enough to make the lender a fiduciary, nor is it sufficient to show that the lender could have exerted leverage by threatening to exercise its contractual rights.
>
> Thus, a complaint has not sufficiently alleged that the lender was a fiduciary if it merely alleges that the lender had a source of power but does not allege how it exercised its power. . . .

*Aluminum Mills Corp, supra*, 132 B.R. at 894 (citations omitted). Or as another of Debtors' cited cases explains:

> If the lending institution usurps the power to make business decisions from the customer's board of directors and officers, then it must also undertake the fiduciary obligation that the officers and directors owe the corporation (and its creditors). This reasoning also dictates the scope of the term "control." *What is required is operating control of the debtor's business, because only in that situation does a creditor assume the fiduciary duty owed by the officers and directors.*
>
> *In re American Lumber Co.,* 5 B.R. 470, 478 (D. Minn. 1980), demonstrates this principle. There a bank was found to have controlled its customers when it had a legal right to a controlling interest in the company's stock, effectuated termination

of all employees other than those necessary to liquidate the business, contracted for a security force to guard the company, determined which of the corporation's creditors would be paid, and told a corporate officer he could quit if he disapproved of the bank's conduct. *See also In re Clark Pipe & Supply Co.*, 870 F.2d 1022, 1030 (5th Cir. 1989) (finding that debtor was mere instrumentality of a lender that had advanced only enough money to liquidate debtor's inventory but not pay other creditors, in order for that lender to convert the inventory in which it held a second priority security interest into receivables in which it held a first priority security interest).

*Badger Freightways, Inc., supra,* 106 B.R. at 977 (emphasis added). *See also Unsecured Creditors' Comm. v. Banque Paribas (In re Heartland Chems., Inc.),* 136 B.R. 503, 517 (Bankr. C.D. Ill. 1992) ("An exception to the general rule that a lending institution is under no fiduciary obligation to its borrower or to other creditors exists when the lending institution exerts dominion and control over its customers. A lending institution is held to a fiduciary standard only when it usurps the customer's ability to make business decisions. . . . *In effect, the lending institution must become the alter ego of the customer before it can be held to a fiduciary standard*") (citation omitted; emphasis added).

The Amended Complaint alleges nothing even close to a MHR "dominion" or "control" over ABD or any "alter ego" status of ABD as to MHR. Although that Complaint alleges that MHR's 2001 Notes were convertible to equity, it concedes that conversion never took place and, that if it had, MHR's resulting equity stake would have been approximately 37 percent, not a controlling position. (Am. Cmplt. ¶ 13) Further, there are no allegations that MHR "usurped" ABD's or its directors' ability to make business decisions or took over "operational control" of ABD. In addition, there are no allegations – because in good faith Debtors never could allege – that MHR negotiated any operational contracts for ABD, hired or fired any employees, determined which creditors of ABD would get paid, controlled ABD's borrowings or engaged in any conduct that even suggested that MHR was running ABD.

4

In fact, as page 6 of the Debtors' opposition memorandum makes clear, the Amended Complaint details only "rights" of MHR that may, or may not, have allowed MHR to exert some influence over ABD. However, as Debtors' own case law makes clear, the ability to exercise control is insufficient to demonstrate "dominion and control." *See, e.g., Century Glove, Inc., supra,* 151 B.R. at 333 ("The mere potential for control is not equivalent to control"); *Aluminum Mills Corp., supra,* 132 B.R. at 894 ("[A] complaint has not sufficiently alleged that the lender was a fiduciary if it merely alleges that the lender had a source of power but does not allege how it exercised its power").[3]

The absurdity of ABD's position is stark: in order for ABD to obtain a Stock Purchase Agreement from Presstek, MHR had to be agreeable to compromise its rights under the 2001 Notes. However, ABD contends that MHR, even as a contracting party, had no right to negotiate with Presstek and thereby protect its own interests. If ABD is allowed to maintain this argument, a dangerous precedent will be set: contracting parties, unhappy with the deals they make, would be able to manufacture "fiduciary obligations" owed from arm's-length parties, and then attack the manner in which they negotiated. Controlling law flatly refutes any such outcome. *See, e.g., Metro Ambulance, Inc. v. E. Med. Billing Inc.,* 1995 Del. Ch. LEXIS 84, *8 (Del. Ch. July 5, 1995) ("The parties here bargained for and defined their relationship, including the protection of their particular interests, in two commercial contracts . . . . *I will not artificially manipulate the parties' commercial relationship to create fiduciary duties where none exist*") (emphasis added); *Abex Inc. ("Abex") v. Koll Real Estate Group, Inc. ("Koll"),* 1994 Del. Ch. LEXIS 213, *49, 51 (Del. Ch. Dec. 22, 1994) (where plaintiff Koll alleged a fiduciary duty arising from defendant

---

[3] The Amended Complaint is devoid of any allegations demonstrating how the Debtors' list of MHR rights was then used by MHR to exercise "dominion and control" over ABD. Instead, Amended Complaint alleges only that MHR had a representative on the board of directors of ABD, and that MHR engaged in negotiations with Presstek *with respect to the SPA, i.e., a contract to which MHR was a contracting party and under which MHR relinquished significant rights.*

5

Abex's "unilateral[] impos[ition]" of contracts on Koll, the court held: "Legally, Koll and Abex had only a commercial relationship, arising out of contract, which was at arm's-length and involved no element of confidentiality or joint undertaking. Where (as here) there exists no 'special' relationship of trust, there is no reason or basis to imply fiduciary duties . . ."); *Bus. Funding Group, Inc. v. Architectural Renovators, Inc.*, 1993 Del. Ch. LEXIS 51, *4-5 (Del Ch. Mar. 31, 1993) ("[T]he parties' relationship, which is defined exclusively by the purchase and sale agreements, involves an arm's-length commercial dealing and bears none of the earmarks of a fiduciary relationship"); *McMahon v. New Castle Assocs.*, 532 A.2d 601, 605 (Del. Ch. 1987) ("If plaintiff entered the lease agreements with an expectation of honest dealing on the part of defendant (which expectation, one imagines, attends every contractual undertaking) and now wishes to characterize that expectation as placing trust in defendant is beside the point. There is no basis in our developed law to accord that expectation the status of 'special trust' that would render the legal remedy for breach of contract inadequate").

## II. Debtors "Insider" Argument Fails To Save Their Defective Equitable Subordination Claim

As to their equitable subordination claim, Debtors' own case law once again defeats their arguments. Debtors contend that they have pleaded a cognizable claim for equitable subordination because MHR is purportedly an "insider" that "controlled" ABD. (Debtors Mem., p. 9) However, Debtors' allegations do not even suggest the level of control necessary for such a finding:

> As noted, "insider" is defined by a non-inclusive list of examples, but each involves either an officer or director, or person in a position to dictate corporate decision making. Indeed, the primary focus of case authorities on these issues has been on operating control. When describing the requisite level of influence the lender must have to be an insider, courts have used terminology such as having a "stranglehold" over the debtor, having "complete domination" of the debtor, rendering the debtor a "mere instrumentality or alter ego" of the lender or "powerless to act independently. . . ."

6

> Further, the existence of arms-length bargaining is evidence that the lender was not an insider. *See Hartley,* 52 B.R. at 689 (holding that an individual did not control a bank in part because the parties dealt at arms-length in requiring certain collateral to be pledged); *Technology,* 56 B.R. at 316. A close relationship by itself is insufficient to make a bank an insider.

*Badger Freightways, Inc., supra,* 106 B.R. at 982 (citations omitted). *See also Official Comm. Of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.),* 299 B.R. 732, 743 (Bankr. D. Del. 2003) ("Lending institutions have been found to be insiders when exerting 'dominion and control', or, when they 'exercise sufficient authority over the corporate debtors so as to unquantifiably dictate corporate policy and the disposition of assets'") (cited in Debtors Mem., p. 9; citations omitted).

Here, Debtors – which engaged in arms-length bargaining with MHR in reaching the terms of the SPA – have alleged nothing even suggesting that MHR had a "stranglehold" over ABD, had "complete domination" of ABD, rendered ABD a "mere instrumentality or alter ego" of MHR, or made ABD "powerless to act independently." Accordingly, Debtors have not alleged, because they cannot allege, any facts demonstrating that MHR was an "insider" of ABD.

Further, although Debtors concede that there are "three general categories of conduct which may constitute inequitable conduct warranting equitable subordination: (1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant's use of the debtors as a mere instrumentality or alter ego" (Debtors Mem., p. 9), Debtors point to no allegation in their Amended Complaint which demonstrates an equitable subordination cause of action under any of these categories. In fact, Debtors resort to simply complaining about MHR's negotiations with respect to the Stock Purchase Agreement, and point only to their conclusory allegation that MHR took "virtually complete control over the negotiations with Presstek" and that MHR "continued to demand concessions from Presstek . . . that were designed and intended to enrich and prefer [MHR] over other creditors." (Am. Cmplt. ¶¶ 17, 26) Of course, Debtors

point to no specific factual allegations substantiating these conclusory assertions, because there are none.

Once again, MHR was a contracting party to the Stock Purchase Agreement and agreed to give up substantial rights under the terms of that Agreement. Debtors' allegations boil down to dissatisfaction with how MHR negotiated its contractual rights and how diligent MHR was in doing so. Further, it is beyond dispute that the SPA – which Presstek terminated, not MHR – was more valuable to creditors than the APA, and thus how MHR was hurting creditors in its negotiations over the SPA is impossible to understand.

### III. Debtors Fail Even To Address MHR's Causation Showing

Debtors fail even to address MHR's showing that even if it were possible to manufacture some breach of fiduciary duty theory out of Debtors' new claims, Debtors have failed to adequately plead causation. *See, e.g., Preston v. Preston,* 1981 Del. Ch. LEXIS 577, *6 (Del Ch. Apr. 16, 1981) (breach of fiduciary duty claim requires showing of "a causal connection between the defendant's conduct and the plaintiffs' injury"). Debtors have affirmatively pleaded that Presstek – and not MHR – "failed to proceed" with the Stock Purchase Agreement. (Am. Cmplt. ¶ 30) (*See also* MHR Mem., pp. 14-15)

### IV. Debtors Also Fail To Address MHR's Arguments Regarding MHR Management

Debtors also fail to address MHR's showing that Debtors' "fiduciary duty" contentions, as meritless as they are, could never apply to MHR Management because MHR Management *was never a holder of the 2001 Notes.* (MHR Mem., p. 15)

IV. **Debtors Offer Nothing To Refute MHR's Evidence Demonstrating That Debtors Welcomed MHR's Participation In The SPA Negotiations And Recognized That MHR, In So Negotiating, Was Not Representing The Interest Of Any Debtor**

Lastly, Debtors have no real response to the summary judgment evidence submitted by MHR and offer nothing – not even an affidavit – to refute it. That evidence demonstrates that Debtors openly encouraged MHR's participation in the SPA negotiation process, recognized that MHR was not representing the interests of the Debtors in those negotiations, and expressly reserved to themselves the right to review any agreement negotiated by MHR and Presstek. (MHR Mem., pp. 5-6) Further, MHR's evidence also demonstrates that on April 14, 2004 – two months and two days before the SPA was executed – there was no deal to acquire ABD and the Debtors had just quit the negotiation process in frustration over Presstek's conduct; accordingly, anything that followed in the next two months cannot possibly be characterized as a two month "delay." (*Id.*)

The best response Debtors can come up with is the ridiculous notion that the admissions, deposition testimony and board resolutions submitted by MHR "reflect . . . a recognition on the part of the Paragon board and its chairman of the reality that MHR had already hijacked and taken control of the negotiations . . . ." (Debtors Mem., p. 11) None of the evidence before the Court even suggests such a "hijacking:"

(a) the chairman of Paragon's board expressly stated that Paragon was "very satisfied with the ongoing dialog between [MHR] and [Presstek]," and had "asked [MHR] to continue to work with [Presstek] to further define the proposal. . . ." (Fay Decl. Exh. B);

(b) that same chairman also specifically stated that "Paragon did not task Hal [Goldstein of MHR] with negotiating the business deal" with Presstek and

9

    that Mr. Goldstein "represent[ed] the interests of MHR (a significant exchange note holder)" (*id.*); and

(c) the Paragon Board adopted a resolution which said, among other things: "that it is not in the best interests of Paragon to continue expending significant time and resources in negotiating a transaction with Presstek, *but it will evaluate and consider such other reasonable proposal to acquire AB Dick that Presstek submits following its discussion with the Noteholder [MHR] or otherwise . . . ."* (emphasis added) (Fay Aff. Exh. A).

Expressly recognizing that MHR was negotiating for MHR, not ABD, is not a hijacking. "Very satisfied" is not feeling hijacked. Willingness to evaluate "reasonable proposals" is not feeling hijacked. Should this Court deem it necessary to convert MHR's motion to one for summary judgment, the unrefuted evidence before this Court unequivocally demonstrates that summary judgment should be granted.

## CONCLUSION

For the foregoing reasons, and those set forth in MHR's opening papers, this Court should grant MHR's motion to dismiss Counts II and III of the Amended Complaint, or alternatively, convert this Rule 12(b)(6) motion to one brought under Rule 56, and grant summary judgment to MHR on Counts II and III.

Dated: August 15, 2005

Respectfully submitted,

/s/ Kerri Mumford

Richard S. Cobb (No. 3157)
Kerri K. Mumford (No. 4126)
LANDIS RATH & COBB
919 Market Street
Suite 600
Wilmington, DE  19899
(302) 467-4400

-and-

David S. Rosner
Michael M. Fay
Noelle Kowalczyk
Kim Conroy
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York  10019
(212) 506-1700

Counsel to MHR CAPITAL PARTNERS LP,
MHR INSTITUTIONAL PARTNERS LP,
MHRM LP and MHR FUND MANAGEMENT LLC